## STATE v. O'CONNOR et al.
### No. 9468.

Court of Civil Appeals of Texas. San Antonio.

April 4, 1934.

Rehearing Denied May 9, 1934.

F. O. McKinsey and James V. Allred, both of Austin, for the State.

Procter, Vandenberge, Crain & Vandenberge, of Victoria, for appellee.

SMITH, Justice.

This proceeding was brought by the state to review and revise the report of appraisers appointed under the statute to appraise the value of the estate of Joseph O'Connor, of Victoria county, deceased, for the purpose of ascertaining the amount of inheritance tax to be paid the state by those taking said estate under the will of the said O'Connor.

Provisions for assessment and collection of inheritance taxes are embraced in articles 7117–7144, chapter 5, title 122, R. S. 1925, under the general subject of "Taxation," and the particular subject of "Inheritance Tax." Those statutes have been repealed in part and amended in part since the revision of 1925, but such changes, except as to article 7125 as amended by Acts 1929, c. 26, § 1 (Vernon's Ann. Civ. St. art. 7125), were made subsequent to the death of O'Connor, and therefore do not affect the questions presented in this appeal.

The statutes provide that certain real and personal properties of estates of decedents shall be subject to the tax therein provided for, upon prescribed assessments and deductions. The provisions are quite numerous and lengthy, and need not be set out at large here.

It is provided that every executor, administrator, trustee, and every person coming into possession of property subject to the tax shall make and file a report thereof in duplicate with the state comptroller and county clerk, and the latter shall forthwith notify the county judge of such filing. It is then provided:

"Art. 7130. *Appraisal.*—The judge of the county court having jurisdiction of the estate of the decedent shall appoint two competent disinterested persons, to be approved by the Comptroller, as appraisers to fix the value of the property of such decedent subject to taxation hereunder; or upon agreement of the parties interested to dispense with the appointment of appraisers, the county judge and Comptroller shall appraise the property and make and file a report of such appraisement. The appraisers, being first sworn, shall forthwith give notice to all persons known to have any claim or interest in the property to be appraised, including the executor, administrator or trustee, of the time and place when they will appraise the same. At such time and place, said appraisers shall appraise such property at its actual market value if it has a market value, and in case it has none, then its real value at the time of the death of the decedent, and shall thereupon make a report thereof in writing to said county judge and Comptroller, who shall file and keep such report. * * *

"Art. 7131. *Fixing tax.*—Immediately after the filing of the appraisal report, or as

soon thereafter as practical, the county judge shall calculate and determine the tax due on such property, according to the value thereof as shown in such appraisement, and shall furnish a statement of the same to the Comptroller for verification. If the Comptroller finds the tax to be correct, he shall so advise the county judge, whereupon it shall immediately become the duty of the county judge to certify such amount to the collector of taxes, to the executor, administrator or trustee, and to the person to whom or for whose use, the property passes, and said tax shall be a lien upon such property from the death of the decedent until paid."

It is thereupon provided that if the amount of taxes due, "as shown by such assessment furnished by the county judge and Comptroller" (section 7134), is not paid in two months, it shall draw 2 per cent. interest per month, and if not paid in nine months the comptroller shall notify the county or district attorney, who shall forthwith file suit in the district court and foreclose as in case of other tax liens.

It is provided that if the trustee or executor of the estate is to be compensated in property in lieu of commission, such property in excess of a reasonable compensation, to be determined by the county judge and comptroller, shall be subject to the tax.

It is provided that in case no administration is necessary except to carry out the provisions of the law, it shall be in the discretion of the county judge and comptroller to dispense with the appointment of an administrator, upon filing with each a "satisfactory" inventory of the taxable property by the trustee or owner, in which event the appraisement or other proceedings required by this chapter shall be had as in other cases.

It is provided that in case of the death of a nonresident of the state, who owns no property in this state except stocks and bonds of domestic concerns, "and such fact is shown to the satisfaction of the Comptroller, such officer shall value said property" (section 7129), in which case the executor, etc., when advised of the amount, may pay said tax direct to the comptroller.

It is further provided that the state shall have a lien upon taxable property for the amount of the tax, and that no estate shall be closed, or final account approved, or any part of the property distributed, until the tax is paid.

And, finally, it is provided that the comptroller shall furnish forms for all required reports, and that if any person charged with the duty of making reports thereunder shall knowingly make a false report, he shall be liable to a penalty of $1,000.

It appears from the record here that the decedent left a will in which he devised his estate to two brothers and a named niece, the estate to be administered by independent executors nominated in the will.

It appears that the executors filed an inventory and appraisement of the estate, five-sixths of which was shown to be personal property and the remainder lands situated in various counties.

It appears, further, that in due course the county judge, in pursuance of the provisions of article 7130, quoted above, appointed two citizens to appraise the estate for the purpose of determining the value thereof for inheritance tax purposes; that the comptroller approved said appointments, as further provided in said articles; that said appraisers proceeded after notice to appraise said estate and file their report thereon with the county judge as provided; that upon that report the county judge computed the amount of tax shown to be assessable upon said appraisement, and filed same with the comptroller for the latter's "verification."

By this process the persons charged with the duties imposed upon them by the state strictly complied with the statutory provisions in ascertaining the taxable values of the properties of the estate, and in computing the amount of the tax assessable against the estate, including the filing of that computation, by the county judge with the comptroller, so that nothing remained to be done except the required act of the comptroller in "verifying" the county judge's computation, and confirming the correctness thereof to the county judge.

The comptroller, however, refused to "verify" the county judge's calculation, the correctness of which appears to be conceded by all parties. Of course, the act of verification is purely clerical, a mere matter of mathematical calculation, and it would seem the comptroller cannot arbitrarily withhold it, or defeat the assessment by such arbitrary refusal to perform a purely ministerial, mechanical act.

At this juncture in the process of assessing the taxes in question, the state intervened and sought in a proceeding filed in the county court of Victoria county to "appeal" from the report of the appraisers fixing the value of the estate. As a basis for the proceeding the state alleged, in effect, that the appraisers had fraudulently appraised the acreage val-

ue of the real property involved at not more than one-half the actual market or cash value thereof, thereby depriving the state of one-half of the inheritance taxes assessable against said lands, which comprised one-sixth of the whole estate. No complaint is made of the valuations fixed by the appraisers upon the personalty, which comprises five-sixths of the estate.

The county court declined to take cognizance of the appeal, and dismissed the proceeding, upon the ground of no jurisdiction. From the order of dismissal the state took the proceeding to the district court, both by appeal as in probate matters, and by certiorari, as provided in article 932 et seq., R. S. 1925. Both proceedings, after being consolidated, were likewise dismissed from the district court, for want of jurisdiction. From the latter ruling the state has brought this appeal.

 Although the question presented has by no means been without its difficulties, this court has concluded that the proceeding is without authority in law, and that both courts below properly dismissed it.

It should be said at the outset that there is no express provision in the statutes for appeals from the report of appraisers upon the value of property as a basis for the assessment of inheritance taxes. On the other hand, the authority to review such reports is expressly lodged in the county judge and the comptroller, jointly. And no express provision is made in the statutes for appeal from or review and revision of the act of approval by those officials.

The only reported case in Texas dealing with the subject presented in this appeal is that of Dodge v. Youngblood, 202 S. W. 116, decided by this court in 1918, in an opinion by Chief Justice Fly. In that case the estate was being administered by an administrator appointed by the county court for the special purpose of adjusting, collecting, and paying over to the state the inheritance taxes chargeable to the estate there under administration. This court held that as the estate was being administered for inheritance tax purposes by the probate court, under an administrator duly appointed by the court for that purpose under the then existing statute, the proceeding was brought within the general statutes relating to the administration of estates, and that the report of appraisers of that estate was such an incident of said proceedings as to render it subject to appeal and certiorari, as in the case of all other orders and judgments entered in probate matters. That decision was undoubtedly correct under the statutes then in force, although upon writ of error the Supreme Court, through the Commission of Appeals (245 S. W. 225), reversed and rendered the judgment of this and the lower court, upon fundamental grounds and without relation to the questions discussed in the opinion of this court.

But the decision of this court in the cited case was grounded upon statutes which were either dropped or materially changed in subsequent acts and in the revision of 1925. For example, in the statutes then in force provision was made for the administration of estates for the purpose of ascertaining, collecting, and paying to the state the inheritance taxes chargeable to the estate, and that provision was invoked and the estate was being actually administered thereunder in the cited case; whereas, no such provision was available or invoked in this case.

For further example, in the statutes upon which the cited case was based, while it was provided that estates should be appraised by persons appointed therefor by the county judge, as is now provided, or by the county judge himself by agreement of the parties interested, it was further provided that when the amount was thus ascertained the executor, etc., should certify the amount to the tax collector, and that if it was not paid by the owner of the property so taxed, the executor, etc., should enforce collection by selling the property at public sale, after notice, and deduct the tax, and costs of collection, from the proceeds of such sale, and pay the balance to the party entitled thereto. Whereas, under the statutes in force in this case, the appraisal shall be by persons appointed by the county judge, with the concurrence of the comptroller; and such appraisal shall be approved by the county judge, with like concurrence of the comptroller; and the county judge shall compute the taxes from such appraisal, and such computation shall be verified by the comptroller; whereupon the tax shall become a lien on the estate; and such lien shall be enforced, not by a sale of the property by the executor, etc., as under the prior statutes, but by suit prosecuted in the district court by the county or district attorney, independently of the county or probate court.

By these changes in the statutes the processes of appraisal, approval of appraisal, assessment of the tax, and enforcement of the lien, were divorced from the county court sitting as a probate court, and placed in

the hands of the county judge and state comptroller, with recourse to the district court for enforcement of the lien. The effect of these changes was to relieve the probate court, or executor, etc., of the estate, of the duty of initiating, prosecuting, or supervising those several processes, or of any obligation in relation to the matter, except to receive notice of the assessment after valuation of the estate and assessment of the tax under the joint direction and supervision of the county judge and comptroller, and to withhold distribution of the estate until assured by those agencies of the payment of the taxes.

[3] By these changes in the statute, by taking those processes out of the general or particular course of administration, and placing them in specific and joint county and state agencies independently of the probate court, and relegating the ultimate enforcement to the district court, and, finally, by omitting any provision for appeal from the action of those agencies, it seems clear that the Legislature intended to relegate aggrieved parties to existing remedies open to them in the general jurisdictional statutes.

Whether that remedy lies in direct action in the district court to establish the claimed right of the state to additional taxes, or to set aside the alleged fraudulent appraisal and then and there adjudicate the question of value, or relegate the matter to further appraisal, is not for this court to say in this appeal. It is well to observe here, again, that the complaint is not directed against the appraisal as a whole, but only to two or three items therein, involving only one-sixth of the estate; that those against whom the assessment was made have paid the amount of the assessment actually made, to wit, $150,000, and the state is claiming that an additional sum of $25,000 is actually assessable and collectible against those persons.

We do not believe that the claim, or the proceedings thereon, are cognizable in the county or probate court, but are cognizable, if actionable at all, only in the district court, if not because of the amount in controversy, then under the constitutional and statutory provision that said court "shall have general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution." Const. art. 5, § 8; article 1909, R. S. 1925.

This holding leads to the conclusion that the county court was without jurisdiction of this proceeding, and properly dismissed the same on that account; and the county court being without original jurisdiction of the proceeding, the district court was likewise without appellate jurisdiction thereof, either by appeal or through writ of certiorari; and the district court being without jurisdiction, this court has none.

Accordingly, it is ordered that the cause be dismissed, at the cost of the state in all courts.

On Motion for Rehearing.

We find we were inaccurate in stating in the original opinion that the state did not intervene to contest the evils complained of until after the comptroller had approved the report of the appraisers and the filing of the county judge's calculation of the tax. The state intervened upon the filing of the appraisal with the county judge. The record does not seem to support the further finding that those chargeable had paid the amount of tax assessed against them upon said appraisal, although in its motion for rehearing the state admits that such payment was accepted by the state, without prejudice to its claim for additional tax.

With these corrections, which do not affect the decision, appellant's motion for rehearing will be overruled.